## WOOLLEY *v.* ADAMS.

The verdict was authorized by the evidence.

July 7, 1890.

Verdict. New trial. Before Judge NEEL. City court of Cartersville. September adjourned term, 1889.

Adams sued Woolley, alleging that Woolley owed him $500 by reason of the fact that, during the year 1887, he was a cropper or tenant on lands of Woolley, the contract between them being that Woolley was to furnish the land, stock, farming tools and seed, to plant the crop and cultivate it, and plaintiff was to plant, cultivate and gather the crops; and plaintiff was to receive one half of the cotton and Woolley the other half. Plaintiff performed his part of the contract, and raised and gathered and had ginned twenty-one bales of cotton, worth $1,000, which Woolley took possession of, sold and pocketed the money. Petitioner was also to receive one half of the cotton-seed, but Woolley took charge and converted four hundred bushels belonging to petitioner, worth $50.

The defendant pleaded the general issue. Also, that the title to the crop was to vest in him until a final settlement between them was had, which had never been had on account of plaintiff's negligence. Plaintiff agreed to cultivate the crop in a good and workmanlike manner and to gather it, and was to receive one half of the proceeds of the cotton, out of which defendant was to be first paid what was due him, but plaintiff did not cultivate the crops as he ought to have done and in consequence the crop of cotton was cut off at least one half. The total amount realized from the sale of the cotton raised was $840.42, and if plaintiff had given proper attention to the crop and cultivated it as he agreed to do, and as he should have done, the crop of cotton would have yielded at least double what it did. He failed to hoe and plow the crop as often as he ought to have done, and allowed it to become grassy, etc., so that defendant was damaged at least the value of ten and a half bales of cotton, worth $440 to $480,

so that defendant ought to retain as his part the full amount for which the cotton sold. Defendant also pleaded that plaintiff owed him $38.20 for money advanced, $21 expenses of ginning cotton and $20 for guano, and that plaintiff by improper use and excessive work of a mule belonging to defendant, worth $150, killed it, and defendant prays judgment against plaintiff for the value of the mule and the other sums mentioned, alleging that plaintiff is wholly insolvent and unable to respond in damages to him, etc.

Upon the trial the plaintiff testified that his contract with the defendant was to furnish the land, stock and plows and feed for the stock, and witness was to furnish the work to make the crop of cotton and corn, was to pay half of the ginning, guano, bagging and ties, and was to get one half of the lint-cotton and one third of the corn and fodder. He got his part of the corn, but his part of the fodder was put in defendant's stable, who was to pay him for it, but never has. He made twenty-one bales of cotton which would average about 450 pounds each, worth eight or nine cents per pound. The cotton crop was damaged and the yield cut off by not being plowed enough to keep the grass out. The most of the work done after the mule died was done with the hoe. Was sick some in June and could not work. After one of the mules died, defendant gave him a mare to work in place of the mule, but she would not work to the cultivator. Did not leave his crop in June to work for other people. Did not kill the mule. Had seen it sick several times before it died, and it was sick early in the morning of the day it died but was worked nearly all that day, plowing. It was put up at night and fed, and the next morning it was dead. Defendant told him if he wanted help, to hire the hands and he would advance the money to pay them. He applied to him for money, and got, he thinks in all, $41.

After that mule died, defendant required his plow horses or mules to be brought in at half past ten o'clock in the morning and rested until three o'clock in the afternoon, and that put witness behind with his crop. Witness owns a house and lot worth $300, two mules not paid for, and has a crop of cotton which he thinks will make twenty bales, but owes $900 or $1,000. He applied to defendant to help him clean out the crop, and defendant did not do it. Told him when he took the crop to cultivate that he would have to help him some with it, and he promised to do it but did not. Witness's wife and children were sick during a part of the summer, and they could not work all the time. There was nothing the matter with the crop except that it ought to have been plowed another time. About the time it ought to have been plowed the last time, it began to rain and continued to rain two or three weeks, and then when it got so he could plow, the cotton was beginning to open, and defendant said if it knocked out the cotton too much, to stop, and it did and they did stop. Witness worked all the time he could in the crop, but for the sickness of himself and family. There was other testimony tending to sustain that of the plaintiff; but one of his witnesses testified to facts tending to show that plaintiff neglected the crop so that the yield was cut off one half, and that the mule died from the bad treatment of the plaintiff. There was evidence that defendant had never paid one Rogers the money which Rogers advanced to plaintiff on defendant's order, and had only accepted the order conditionally, saying he would pay it if he owed plaintiff anything after paying himself. The cotton raised by plaintiff was sold for about $840.

The evidence for the defendant tended to show that plaintiff neglected the crop so that the yield of cotton was cut off at least one half; that he killed a mule

which was worth $150; that the items stated in defendant's plea were correct, and defendant advanced $5 in addition; that plaintiff is insolvent; that he never applied to defendant for help to clean out his crop, which help defendant refused; that he did not tell defendant when the crop was first made that defendant would have to help him with his crop, but that defendant did tell him if he needed help, to get the hands necessary and defendant would advance the money for him to pay them for their work; that defendant did all he agreed to do, and had paid to Rogers the money which he got Rogers to furnish plaintiff. Defendant did not tell plaintiff, when he went to plow his crop the last time, to stop if it knocked out the cotton. It was not defendant's duty to get up hands for plaintiff, as plaintiff was to furnish the work; and defendant did not agree to furnish plaintiff the cultivator to work with, but did allow him to use it. One of defendant's witnesses testified that he saw a portion of plaintiff's crop and it was so full of grass that it looked more like a hay-field than a cotton-field. The mare which defendant furnished plaintiff, after the mule died, was a splendid animal and a good plow horse.

The jury found for the plaintiff $196.91 principal, with interest, and defendant moved for a new trial, on the grounds that the verdict was contrary to law, evidence, etc., and that the jury evidently allowed defendant nothing for plaintiff's failure to cultivate the crop. The motion was overruled, and the defendant excepted.

J. B. CONYERS and J. H. LUMPKIN, for plaintiff in error.

BAKER & HEYWARD, contra.

BLANDFORD, Justice.

In this case a motion for a new trial was made upon the ground that the verdict was contrary to the evidence

and contrary to law. We think, upon a full considera-
tion of this case, and after having considered all the
evidence submitted by the parties, that there was suffi-
cient evidence to authorize the verdict, and that the same
was not contrary thereto or contrary to law; and the
judgment is therefore                    *Affirmed.*